UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE FURWA, *et al.*,

    Plaintiffs,

v.

OPERATING ENGINEERS LOCAL 324 HEALTH CARE PLAN, *et al.*,

    Defendants.

Case No. 18-12392
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [23] AND DENYING DEFENDANTS' MOTION TO DISMISS [25]**

    Nicole Furwa is a member of Operating Engineers Local 324, a labor union. Local 324 negotiates collective bargaining agreements with the Michigan Infrastructure and Transportation Association, a trade group whose members employ Local 324's members to work on Michigan's roads. This past spring, the collective bargaining agreements terminated. These collective bargaining agreements included, as part of the union members' overall compensation, the payment of healthcare contributions by the employers. Post-termination, the employers wanted to continue to make these healthcare contributions. And Local 324's Health Care Plan agreed to accept some employers' contributions but not others.

    Furwa and at least 19 other union members are among those that had their healthcare contributions rejected. And they believe this is a breach of the Defendants' fiduciary duties. So Furwa and others seek a preliminary injunction to force the Health Care Plan to accept and credit healthcare contributions from their employers.

# I.

## A.

Nicole Furwa and at least 19 other putative plaintiffs are members of Operating Engineers Local 324, a union. (ECF No. 23, PageID.1156.) Defendants are the Operating Engineers Local 324 Health Care Plan and its ten trustees, along with the union's other fringe-benefit trust funds. (*Id.* at PageID.1156–1157.) For eligible union members, the Health Care Plan and the other fringe-benefit funds accept contributions from employers. (*Id.* at PageID.1157.) Employer contributions are based on the number of hours worked by each union member. For each union member, the Health Care Plan, and the other funds, credit employer contributions toward union members' vacation days, retirement accounts, and health insurance coverage. (*Id.*) All the trust funds, including the Health Care Plan, are creatures of the Taft–Hartley Act. (*Id.*)

The Taft–Hartley Act's default rule makes it illegal for employer associations to make payments to employee groups, *e.g.*, unions. 29 U.S.C. § 129(a). But the default rule contains exceptions. And one exception allows employers to make payments "for the sole and exclusive benefit" of union members, so long as the payments go into a trust fund jointly administered by employer and union management. *See* 29 U.S.C. § 186(c)(5). Jointly administered means the funds' trustees must include an equal number of union trustees and employer trustees. *Id.* Finally, to protect against improper payments by employers, the exception authorizes contributions to trust funds only if the "detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B).

Taft–Hartley's requirement of a "written agreement with the employer" underlies the controversy in this case, a controversy stemming from a fraught collective bargaining relationship between Local 324 and the Michigan Infrastructure and Transportation Association, a trade group

known as MITA. MITA comprises hundreds of employers that hire Local 324's members to repair the state's roads (and other public utilities). (ECF No. 23, PageID.1158.) Some MITA members—like Ajax Paving and Dan's Excavating—give MITA power-of-attorney. (ECF 23, PageID.1186.) By giving MITA power-of-attorney, Ajax and Dan's and others permit MITA to bargain with the union on their collective behalf. (*Id.* at PageID.1158.) Other MITA members do not give power-of-attorney to MITA. (*Id.* at PageID.1159–1160.) Each of those contractors bargain directly with the union. (*Id.* at PageID.1160.)

The end result is a host of collective bargaining agreements. For the power-of-attorney contractors, MITA and Local 324 have negotiated what are referred to as 8(f) agreements. (ECF No. 17, PageID.677–678.) One 8(f) agreement covers employers and union members working in the utility unit; another 8(f) covers employers and union members working in the road unit. The collective bargaining agreements cover a lot of ground. (*See, e.g.*, ECF No. 18-3.) But most importantly to this case, both 8(f) agreements require employers to contribute to the Taft–Hartley funds. (ECF No. 18, PageID.1015–1016, 1061–1062.) And the 8(f) agreements specify the dollar amounts employers are to contribute to the Health Care Plan on behalf of each eligible employee. (*Id.*) As for those employers who bargain directly with Local 324, they negotiated separate collective bargaining agreements. (ECF No. 23, PageID.1161.)

However, this past spring, all the collective bargaining agreements expired (including the two 8(f) agreements between MITA and the union). (ECF No. 17, PageID.677.) Even so, union members continued to show up to work for all MITA contractors. (ECF No. 17, PageID.679.) And all MITA contractors continued to make contributions to Local 324's Health Care Plan, pursuant to the collective bargaining agreements. (*Id.*)

Not long after the agreements expired, representatives from MITA and Local 324 each sent letters to the Health Care Plan's trustees. MITA's letter advised that, despite the expiration of the 8(f) agreements, the Health Care Plan should continue to accept contributions from all employers on behalf of all employees showing up for work. (ECF No. 17, PageID.678.) At a minimum, MITA's letter recommended the trustees escrow the contributions until MITA and Local 324 negotiated successor agreements. (*Id.*) And MITA's letter affirmed that contractors would continue to make contributions in line with the amounts set by the expired 8(f) agreements. (*Id.*) Local 324 did not agree with MITA. Focusing specifically on those union members working for power-of-attorney contractors, Local 324's letter said the union had no interest in working out successor agreements with MITA. (*Id.*) Rather, Local 324 was abandoning negotiations with MITA and with employers who gave power-of-attorney to MITA. (*Id.*) Instead, the union wished to negotiate individually with each contractor. (*Id.*) So Local 324's letter said the trustees could not accept and credit contributions from any contractor who gave MITA power-of-attorney. (*Id.*)

Unsure how to proceed in the face of dueling positions, the trustees asked the Health Care Plan's lawyer for advice (ECF No. 17, PageID.678.) And the lawyer said that in the past, when 8(f) agreements between Local 324 and MITA expired, the fund kept employer contributions in escrow until the parties reached a new agreement. (*Id.* at PageID.678–679.)

But Local 324's trustees resisted that approach. (ECF No. 17, PageID.679.) Past incidents offered no prologue, they said, because this time the union had no interest in continuing to negotiate with MITA. (*Id.*) According to the union, absent its intention to negotiate a successor agreement with MITA, the fund could not accept contributions made by power-of-attorney contractors. (*Id.* at PageID.679.) However, the union affirmed that it intended to negotiate successor agreements with contractors that did not give MITA power-of-attorney. (*Id.*)

4

Initially, the ten trustees reached only a partial agreement on how to proceed. (*Id.*) They agreed to accept and credit contributions made by individual MITA employers who *did not* grant power-of-attorney to MITA. (*Id.*) For those contractors, the trustees believed the expired collective bargaining agreements, plus the union's intention to continue negotiations, together, satisfied Taft–Hartley. (*Id.*) But the trustees deadlocked on whether to accept and credit contributions from employers who *had* granted power-of attorney to MITA. (*Id.* at PageID.680.)

The trustees met twice more to try to resolve the deadlock. At the first try, the fund's lawyer provided a memo explaining that the contributions from power-of-attorney contractors likely violated Taft–Hartley. (ECF No. 17, PageID.700–701.) The memo echoed the union trustees' position: because the 8(f) agreement had expired, and the union had no interest in a successor agreement, there was no "written agreement" between union and employer as required by Taft–Hartley. (*Id.* at PageID.701.) However, the fund's lawyer noted that MITA's attorney disputed the memo's conclusion. (*Id.*) So, once more, the trustees deadlocked on whether to accept the contributions. (*Id.* at PageID.702.) Then, at the second try, the fund's lawyer suggested the trustees seek out an impartial umpire to break the deadlock. (*Id.* at PageID.780.) But, after a discussion, the details of which were not recorded, the trustees voted to reject all contributions made by power-of-attorney contractors. (*Id.*) As a result, the fund returned all contributions made by employers who gave power-of-attorney to MITA. (*Id.*)

But union members continued to work for contractors who gave power-of-attorney to MITA. (ECF No. 23, PageID.1165.) Yet, consistent with the trustees' vote, the Health Care Plan refused to accept and credit healthcare contributions made by those employers on behalf of those employees. (*Id.*)

Furwa and at least 19 others are those employees. They have sued the trust funds, including the Health Care Plan, and the plan's trustees alleging breach of fiduciary duty. (ECF No. 22.) Furwa and the others say there is nothing unlawful about the Health Care Plan accepting employer contributions from the power-of-attorney contractors. (ECF No. 23, PageID.1167, 1172.) Rather, refusing to accept the contributions is unlawful. They say ERISA establishes a fiduciary duty obligating the trustees to accept and credit the contributions. (*Id.* at PageID.1172.)

Indeed, because the Health Care Plan is not accepting contributions from contractors on behalf of Furwa and the others, these union members say they have effectively lost health insurance. (ECF No. 23, PageID.1175.) So these Plaintiffs seek a preliminary injunction, urging the Court to order the Health Care Plan to accept healthcare contributions made on their behalf. (ECF No. 23.) Doing so, they say, will restore health insurance coverage to all employees.

## II.

A preliminary injunction is an "extraordinary and drastic remed[y] never awarded as of right." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015). Four factors govern the award of a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would bring about substantial harm to third parties; and (4) whether the injunction would serve the public interest. *See Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012). And "'[a]s long as there is some likelihood of success on the merits, [the four] factors are to be balanced, rather than tallied.'" *McGirr v. Rehme*, 891 F.3d 603, 613 (6th Cir. 2018) (quoting *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017)). Furwa seeks the injunction and must carry the burden on all four factors.

**III.**

**A.**

Furwa says she is likely to succeed on the merits of her breach of fiduciary duty claim.

ERISA obligates fiduciaries to discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The statute gives rise to three distinct fiduciary duties. First, fiduciaries owe a duty of loyalty, meaning they are to make all "decisions regarding an ERISA plan . . . with an eye single to the interests of participants and beneficiaries." *Stiso v. Int'l Steel Grp.*, 604 F. App'x 494, 498 (6th Cir. 2015) (internal quotations omitted). Next fiduciaries must "act with the 'care, skill, prudence, and diligence of a prudent person acting under similar circumstances[.]'" *Stiso*, 604 F. App'x at 498 (quoting *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002)). Finally, fiduciaries need to abide by the "exclusive benefit rule" which requires them to "act for the exclusive purpose of providing benefits to plan participants." *James*, 305 F.3d at 448–49.

The trustees insist they did not breach any of their fiduciary duties because doing what Plaintiffs ask would itself be a breach of fiduciary duty. The trustees say, in this case, the terminated 8(f) agreement between Local 324 and MITA does not satisfy Taft–Hartley's "written agreement" requirement. (ECF No. 25, PageID.1225.) So the trustees say they cannot accept and credit healthcare contributions from power-of-attorney contractors because doing so would violate Taft–Hartley. And running afoul of Taft–Hartley would be a breach of fiduciary duty. (ECF No. 25, PageID.1226.) So the trustees say refusing the contributions was in line with their fiduciary obligations.

Furwa disagrees. She says the trustees breached the duty of loyalty when they refused to accept and credit healthcare contributions from power-of-attorney contractors. Accepting those

7

contributions would not amount to a breach of fiduciary duty because of any Taft–Hartley violation. Furwa says the terminated 8(f) agreement—standing alone—satisfies Taft–Hartley's "written agreement" requirement. So, in refusing to accept and credit Health Care Plan contributions from power-of-attorney contractors, the trustees shut their collective "eye single" to the interests of the plan beneficiaries—union members.

Furwa is likely to succeed on the merits. To understand why the law is in Furwa's favor, it helps to review the Taft–Hartley Act and a more common factual scenario. (Not that lawsuits in this Circuit involving Taft–Hartley trust funds are common—they are not. *See, e.g.*, *Bd. of Trs. of the Plumbers, Pipe Fitters, & Mech. Equipment Serv., Local Union No. 392 Pension Fund v. B&B Mech. Servs., Inc.*, 813 F.3d 603, 608–09 (6th Cir. 2015); *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Northwestern Construction, Inc.*, Nos. 95-2379 and 96-1346, 1997 U.S. App. LEXIS 15440 (6th Cir. 1997); *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir. 1989).)

Recall the language of the Taft–Hartley Act. Taft–Hartley makes it unlawful for any "employer . . . or any person . . . who acts in the interest of an employer" to "pay, lend, or deliver . . . any money or other thing of value . . . to any labor organization." *See* 29 U.S.C. § 186(a)(2). As the Sixth Circuit explains, "[t]his statutory prohibition exists to prevent the misappropriation or dissipation of money that is owed to union employees." *B&B Mech. Servs.*, 813 F.3d at 608-09 (6th Cir. 2015) (citing *Behnke*, 883 F.2d at 459)).

But Taft–Hartley makes an exception for an employer contributing "money . . . to a trust fund . . . for the sole and exclusive benefit of the employees of such employer." 29 U.S.C. § 186(c)(5). The exception permits employers to contribute to trust funds because the funds "protect fringe benefits" by requiring that "'the detailed basis on which such payments are to be

8

made is specified in a written agreement with the employer.'" *B&B Mech. Servs.*, 813 F.3d at 609 (quoting 29 U.S.C. § 186(c)(5)(B)).

In the mine-run of cases involving the Taft–Hartley exception, the "written agreement" laying out the "detailed basis" for employer contributions to Taft–Hartley funds is a 9(a) collective bargaining agreement between the union and the employer. *Cent. States, Se. & Sw. Areas Pension Fund v. Capitol City Lumber Co.*, 627 F. Supp. 974, 977 (W.D. Mich. 1985). Eventually, the 9(a) agreement expires or otherwise ends. *Id.* But even after a 9(a) agreement expires, it obligates both sides to maintain the status quo while they negotiate a new agreement. *See Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 882 (9th Cir. 1996). And so, even after the 9(a) expires, union members may continue to show up for work and employers may continue to make contributions to the Taft–Hartley funds. *See Bricklayers*, 1997 U.S. App. LEXIS 15440 at *8. However, an employer sometimes shortchanges the funds. *See Alaska Trowel*, 103 F.3d at 882. After an audit, the funds discover the shortfalls and sue the employer to recover the missing monies. *Alaska Trowel*, 103 F.3d at 882. In defense, employers argue that they do not have to continue making contributions to the funds because the contributions violate Taft–Hartley when they are made after the expiration of a 9(a) agreement. *Cibao Meat Prods. v. NLRB*, 547 F.3d 336, 340–41 (2d Cir. 2008). Yet courts routinely reject that argument, *see id.* at 341 ("Today we join several of our sister circuits in holding that an expired collective-bargaining agreement satisfies the written-agreement requirement of § 302(c)(5)(B)"), especially where the employer has manifested an intent to continue making payments, *Bricklayers*, 1997 U.S. App. LEXIS 15440 at *8–10.

Instead, courts look to the purpose of Taft–Hartley's "written agreement" requirement. *B&B Mech. Servs., Inc.*, 813 F.3d at 608–09; *Bricklayers*, 1997 U.S. App. LEXIS 15440 at *9–10;

*Cibao*, 547 F.3d at 341; *Alaska Trowel*, 103 F.3d at 883. The point of the requirement is to lay out a "detailed basis" for employer contributions to the fringe-benefit funds. *See NLRB v. Amax Coal*, 453 U.S. 322, 328 (1981). Crucially, a "detailed basis" for employer contributions prevents "the misappropriation or dissipation of money that is owed to union employees." *B&B Mech. Servs., Inc.*, 813 F.3d at 608–09. So the statute's purpose is to protect union members' fringe benefits. *Id.*

Importantly, an expired 9(a) agreement protects fringe benefits because it includes a detailed basis for employer contributions to fringe-benefit funds. So even expired 9(a) collective bargaining agreements satisfy Taft–Hartley's "written agreement" requirement. *See Bricklayers*, 1997 U.S. App. LEXIS 15440 at *9–10 ("There is little or no risk that employer contributions to employee benefit funds made pursuant to an expired written collective bargaining agreement will be misappropriated or dissipated by union officials.").

True, this case is different. Here, the trust funds' beneficiaries bring suit against the trust funds (and the trustees of one fund). Plus, the collective bargaining agreements in this case are terminated 8(f) agreements, rather than expired 9(a) agreements. And, while expired 9(a) agreements continue to impose duties on the parties, expired or otherwise terminated 8(f) agreements do not. *See Alaska Trowel*, 103 F.3d at 883; *Capitol City Lumber Co.*, 627 F. Supp. at 977. So, in this case, the primary issue is whether a terminated 8(f) agreement can satisfy Taft–Hartley's "written agreement" requirement.

One circuit says yes. *See Alaska Trowel*, 103 F.3d at 883. *Alaska Trowel* involved an employer who repudiated an 8(f) agreement yet continued to employ union labor. *Id.* at 882. On behalf of his union employees, the employer made contributions to the Taft–Hartley funds. *Id.* But the employer shortchanged the funds, and an audit discovered the shortfall. *Id.* So the funds sued the employer seeking recovery under equitable estoppel. *Id.*

In defense, the employer insisted equitable estoppel was not an option for the trust funds. *Id.* Equitable estoppel could not "be invoked to compel . . . an illegal act[.]" *Id.* at 883 (internal quotations omitted). And, according to the employer, any contributions he made after he repudiated the 8(f) violated Taft–Hartley. *Id*. at 882–83. So because the contributions were illegal in the first place, the trust funds could not rely on equitable estoppel to compel the employer to pay more.

But the Ninth Circuit disagreed. It found nothing unlawful about an employer making contributions to a Taft–Hartley trust fund on the basis of an 8(f) agreement the employer repudiated. *Id*. at 883. The Ninth Circuit reasoned that a repudiated 8(f) agreement, just like an expired 9(a) agreement, provides a detailed basis, in writing, for employer contributions. *Id.* ("In either [a 9(a) or 8(f) relationship], the written agreement, while no longer in force, contains the detailed basis on which payments are to be made, as required by the statute."). And because the detailed basis "provides a sufficient safeguard against the illegal payments [Taft–Hartley] is intended to prevent," a repudiated 8(f) satisfies Taft–Hartley's "written agreement" requirement. *Id.* So an employer may rely on a repudiated 8(f) agreement to make contributions to Taft–Hartley funds. *Id.*

Here, the trustees concede that, in certain circumstances, a terminated 8(f) agreement can satisfy Taft–Hartley.[1] Yet they say a terminated 8(f) does not satisfy Taft–Hartley when the *union* repudiates the negotiating relationship with the *employer*. (ECF No. 27, PageID.1512.) According to the trustees, if an expired 8(f) agreement were to satisfy Taft–Hartley despite the union repudiating any relationship with the employer, then the contract would continue to bind the union

---

[1] Indeed, the trustees rely on an expired 8(f) as the basis for continuing to accept contributions from the employers that have not given power-of-attorney to MITA.

11

even though the union had expressly disavowed the contract. And, the trustees argue, Taft–Hartley says much the same. The trustees say the statute requires two things: (1) a writing and (2) an agreement by both parties to be bound by the writing. (*Id.*) So, in this case, the trustees say accepting the contributions would violate Taft–Hartley.

The Court disagrees. Start with Taft–Hartley's plain language. It requires only a written agreement, not a writing plus an agreement by all parties to continue to be bound by the writing. *See* 29 U.S.C. § 186(c)(5)(B). Case law points in the same direction. *Alaska Trowel* held that a repudiated 8(f) satisfies Taft–Hartley's "written agreement" requirement despite one party disavowing the bargaining relationship. And the "written agreement" requirement serves to make plain the "detailed basis" for employer contributions to Taft–Hartley funds.[2] As mentioned, courts view the "detailed basis" requirement through the lens of § 186(c)'s purpose: to protect union members' fringe benefits by preventing "the misappropriation or dissipation of money that is owed to union employees." *B&B Mech Servs., Inc.*, 813 F.3d at 608–09 (citation omitted). So the trust funds' read of Taft–Hartley is not supported by the plain language of the exception, case law interpreting the exception, or the rationale underlying the exception.

And the trust funds' worry about binding the union to a repudiated 8(f) agreement is misplaced. For one, the argument is complicated by the fact that Local 324 continued to send its members to work for power-of-attorney contractors even after the union repudiated the 8(f) with MITA. *Cf. Bricklayers*, 1997 U.S. App. LEXIS 15440 at *8–9. And no one is suggesting that the union is obligated to continue to perform under the terminated collective bargaining agreements. More importantly, the union members are beneficiaries of the trust funds. And trustees owe their

---

[2] Likewise, in cases involving terminated 9(a) agreements, courts find no Taft–Hartley violation as long as the 9(a) contains a "detailed basis" for employer contributions. *See Cibao*, 547 F.3d at 341.

beneficiaries a duty of loyalty, requiring the trustees to make "all decisions regarding an ERISA plan . . . with an eye single to the interests of the participants and beneficiaries." *Saginaw Chippewa Indian Tribe v. Blue Cross Blue Shield*, -- F. App'x --, No. 17-1932, 2018 U.S. App. LEXIS 24692, at *17 (6th Cir. Aug. 30, 2018); *see also* 29 U.S.C. § 1104(a). The trustees offer nothing to suggest that a union's negotiating position alters the trustees' fiduciary obligations. *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151–52 (7th Cir. 1989) (reasoning that the Taft–Hartley funds are not privy to the collective bargaining process and have obligations regardless of the union's conduct); *see also* 29 U.S.C.§ 1104(a).

Applying the law to the narrow facts of this case, Furwa has shown a likelihood of success on the merits. All agree the 8(f) agreements expired. All agree the union then signaled its intention to stop negotiating with MITA, as well as power-of-attorney MITA contractors. And all agree that despite the union's position, union members continued to show up to work for power-of-attorney contractors. And the power-of-attorney contractors continued to make contributions to the funds on behalf of union members pursuant to the terminated 8(f) agreements. So where an 8(f) agreement expires, and the union then repudiates the bargaining relationship, but union members continue to work, and employers continue to contribute to fringe-benefit funds pursuant to the repudiated 8(f), the repudiated 8(f) agreement likely satisfies Taft–Hartley's "written agreement" requirement.

Therefore, the trustees likely do not violate Taft–Hartley if they accept and credit the contributions to the Health Care Plan. And for the same reasons, the trustees likely do not run afoul of ERISA's requirements for employer contributions to Taft–Hartley funds. *See Bricklayers*, 1997 U.S. App. LEXIS 15440 at *9; *Behnke, Inc.*, 883 F.2d at 459; 29 U.S.C. §§ 1102(a), 1145. So, in

13

refusing to accept and credit the contributions, the trustees likely breached their fiduciary obligations to union members.

**B.**

Furwa says the trustees' breach of duty caused her and 19 others to have suffered irreparable harm. Under the terms of the repudiated 8(f) agreement, they have worked the required hours to receive healthcare coverage through the Health Care Plan (ECF No. 31, PageID.1965.) But because the plan is not accepting and crediting contributions on their behalf, they currently go without health insurance. (*Id.*) The trust funds counter that, at worst, Furwa and others are just paying a bit more for health insurance or using "hour banks" which allow them to continue receiving plan coverage.

Plaintiffs' counsel's representations on the record at the hearing, combined with the affidavits, establish irreparable harm. Take Furwa. She says she met the Health Care Plan's eligibility requirements as of July 2018. But she has not received health insurance because the Health Care Plan is not accepting and crediting payments from her employer (a contractor who gave MITA power-of-attorney). (*Id.*) So she avoids going to the doctor. And at least 19 other union members are in the same, or a similar, position as Furwa. (ECF Nos. 23-3; 23-4; 23-5; 23-6; 23-7; 23-8; 23-9; 23-10; 23-11.) As Furwa and the other union members have demonstrated that they lack health insurance, and are therefore forgoing medical treatment, they have established irreparable harm. *See Wilson v. Gordon*, 822 F.3d 934, 958 (6th Cir. 2016) (finding that "[c]ourts routinely uphold preliminary injunctions where the alleged irreparable harm involves delay in or inability to obtain medical services . . . ."); *Welch v. Brown*, 935 F. Supp. 2d 875, 888 (E.D. Mich. 2013) *aff'd* 551 F. App'x 804 (6th Cir. 2014); *see also LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 55 (2d Cir. 2004) (holding that "the termination of medical benefits will ground a

14

claim of irreparable harm"); *United Steelworkers v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987) (Breyer, J.).[3]

## C.

As for the remaining factors, neither party points to any possible harm to third parties or to Defendants. With respect to the public interest, Furwa says issuing an injunction serves the public interest in promoting access to healthcare while the trust funds say an injunction would trample Taft–Hartley (because the contributions are not made pursuant to a written agreement). But this concern has already been addressed.

## IV.

At bottom, the preliminary injunction factors balance out in favor of Furwa and the other union members. They have shown a likelihood of success on the merits along with irreparable harm. Neither party identifies a potential harm to a third party; nor does an injunction fly in the face of the public interest. So the Court GRANTS Furwa's motion for a preliminary injunction (ECF No. 23) and orders the trust funds to accept and credit all employer contributions to the Health Care Plan on behalf of all employees pending the resolution of this case.

For the same reasons, the Court finds that Plaintiffs have stated plausible claims for breach of fiduciary duty. Thus, Defendants' motion to dismiss (ECF No. 25) is DENIED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: December 3, 2018

---

[3] Nor is it clear that forcing the Plaintiffs' to use "banked hours" they could otherwise continue to save or purchase COBRA will be compensable through money damages.

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, December 3, 2018, using the Electronic Court Filing system and/or first-class U.S. mail.

                                              s/William Barkholz
                                              Case Manager