UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE FURWA, *et al.*,

    Plaintiffs,

v.

OPERATING ENGINEERS LOCAL 324
HEALTH CARE PLAN, *et al.*,

    Defendants.

Case No. 18-12392
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

**ORDER MODIFYING INJUNCTION, DENYING STAY PENDING APPEAL [36], AND DENYING MOTION TO RECONSIDER [35]**

This is a breach-of-fiduciary-duty case. It arises out of a decision made by the trustees of Operating Engineers Local 324 Health Care Plan to stop accepting certain health care contributions for union members. The Health Care Plan is a Taft–Hartley trust fund established for the sole benefit of area operating engineers. The operating engineers' employers make monetary contributions to the fund. These employer contributions go toward the operating engineers' healthcare coverage. Yet healthcare coverage was either ceased or interrupted for Nicole Furwa, and others similarly situated, once the Health Care Plan's trustees voted to reject contributions from some employers but accept contributions from others.

So Furwa and those in like circumstances sought a preliminary injunction ordering the trustees to accept healthcare contributions from all employers. The Court granted the injunction. Now the trustees move the Court to reconsider and stay this ruling.

**I.**

To understand why the Health Care Plan's trustees rejected contributions from some employers, but not others, requires a bit of background. The crux of this case is a dispute between

Local 324 and a trade group known as the Michigan Infrastructure & Transportation Association. MITA bargains collectively with Local 324 on behalf of those contractors (i.e., employers) who give MITA their powers of attorney (the POA contractors). But not all contractors give their power of attorney to MITA. And those contractors that do not (non-POA contractors) bargain individually with Local 324. As a result, Local 324 entered into a NLRA § 8(f) collective bargaining agreement with MITA covering all POA contractors. And Local 324 entered into multiple 8(f) collective bargaining agreements with the individual non-POA contractors.

However, earlier this summer, as argued by the trustees, all the collective bargaining agreements expired. At that point, Local 324 indicated it was no longer willing to negotiate collective bargaining agreements with MITA. Local 324 also said it would not negotiate a new CBA with any POA contractor. The union was only willing to negotiate one-on-one with contractors who did not give their powers of attorney to MITA. In practice, that meant Local 324 repudiated the negotiating relationship with MITA and the POA contractors, but Local 324 stayed at the bargaining table with each non-POA contractor. (ECF No. 28, PageID.1794–1897.)

Because the Health Care Plan's trustees are made up of equal numbers of union and management trustees (*see* ECF No. 35-4), the dispute between Local 324 and MITA spilled over to the Health Care Plan. MITA and Local 324 each sent letters to the trustees summarizing the dispute. MITA's letter indicated the trustees should continue to accept and credit all contributions as long as employees showed up for work. Or, in the alternative, MITA suggested the Plan should escrow contributions from POA contractors. In contrast, Local 324's letter said the Plan should only accept contributions from the non-POA contractors (with whom Local 324 was still willing to negotiate) and reject contributions from the POA Contractors. Although it took some time, eventually a majority of the trustees voted to do exactly as the Local 324 suggested. They accepted

and credited contributions from non-POA contractors but rejected contributions from POA contractors.

The trustees voted to draw a line between POA contractors and non-POA contractors based on their interpretation of the Labor Management Relations Act of 1947 (also known as Taft–Hartley). Section 302 of Taft–Hartley creates trust funds like the Health Care Plan. As a general rule, Taft–Hartley prevents employers from making payments to unions. But Section 302 carves an exception for employers to make payments to a fringe-benefit fund, like the Health Care Plan, provided there is a "written agreement" setting out the "detailed basis" for the contributions. Here, the trustees interpreted Taft–Hartley's "written agreement" to require two things: (1) a "writing evidencing the underlying contribution obligation to the fund[,]" plus (2) "an agreement or mutual understanding between a union and an employer." (ECF No. 27, PageID.1500.) So, because Local 324 agreed to continue negotiating with the non-POA contractors, the trustees believed that promise of continued negotiation, combined with the expired 8(f) collective bargaining agreements, satisfied what they believed were the dual requirements of Taft–Hartley. Therefore, the trustees continued to accept and credit contributions from the non-POA contractors. But, because Local 324 said it did not wish to continue negotiating with MITA, the trustees did not think they could rely on the expired 8(f) agreements alone to satisfy Taft–Hartley with respect to the POA contractors. So the trustees rejected contributions from the POA contractors.

At bottom, the trustees' decision left some of the Health Care Plan's beneficiaries without healthcare coverage. Furwa and other employees of POA contractors were either no longer able to gain eligibility for healthcare coverage or were unable to count on the Health Care Plan to pay for their medical costs. So they sued claiming breach of fiduciary duty and sought preliminary injunctive relief against the trustees.

Consistent with the trustees' concerns all along, the parties' briefing focused on one issue: whether the trustees would violate Taft–Hartley's "written agreement" requirement if they accepted and credited contributions from the POA contractors. (*See* ECF No. 9, PageID.126–132; ECF No. 18, PageID.794–795; ECF No. 23, PageID.1166–1175; ECF No. 27, PageID.1496–1497.) Neither side requested an evidentiary hearing, but the Court still held oral argument. And eventually, the Court granted Furwa's request for an injunction. *See generally Furwa v. Operating Engineers Local 324 Health Care Plan*, No. 18-12392, 2018 U.S. Dist. LEXIS 203675 (E.D. Mich. Dec. 3, 2018). The Court found no support for the trustees' interpretation of Taft–Hartley from either the statute's plain text or its purpose. And what limited caselaw the parties and the Court found on the issue supported that a repudiated 8(f) agreement, alone, likely satisfied Taft–Hartley's "written agreement" requirement. *Furwa*, 2018 U.S. Dist. LEXIS 203675 at *19. Finding no likelihood of a Taft–Hartley violation, the Court believed the beneficiaries had a likelihood of success on the merits of their breach of fiduciary duty claim. *Id.* And after considering the remaining factors, the Court ordered the trustees to accept healthcare contributions from all employers on behalf of all employees. *Id.* at *22.

Now the trustees urge the Court to revisit its decision to issue the injunction. (ECF No. 35) And they move to stay the injunction pending an appeal. (ECF No. 36.) The Court turns first to the motion to reconsider.

**II.**

**A.**

The trustees move for reconsideration pursuant to Local Rule 7.1(h)(3). To prevail, the trustees need to "not only demonstrate a palpable defect by which the court and the parties and

4

other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3).

The trustees say the Court was misled into thinking Taft–Hartley was the only obstacle keeping the trustees from accepting payments from all employers.[1] Independent of Taft–Hartley, say the trustees, a section of ERISA also stands in the way of accepting and crediting contributions from all employers.

To be sure, the Court wondered what role ERISA played in the case. But there was no indication in the briefs that, aside from Taft–Hartley, the trustees had grounds for not accepting employer contributions. That indication did not come until oral argument. There, the Court asked counsel for the trustees if Taft–Hartley was the only obstacle to accepting and crediting the contributions. (ECF No. 34, PageID.1993.) It was only in response to this question that trustees' counsel, for the first time, raised the argument now dominating the motions to stay and reconsider. (ECF No. 24, PageID.1993, 1995.) Yet for the remainder of oral argument, as they had in their brief, the trustees focused on Taft–Hartley. (ECF No. 34, PageID.1995–2035.) And the Court's main sticking point was how the trustees were distinguishing contributions from POA contractors versus non-POA contractors. (*See* ECF No. 34, PageID.2012–2013.)

---

[1] The trustees are correct that the Court focused on the Taft–Hartley issue. Because that is the issue the trustees focused on. (*See* ECF No. 23, PageID.1159–1165.) They are also correct that the Court did not address their newly briefed argument. The trustees passed a resolution that they would not accept fringe benefit contributions from POA-employers because there was "no legal basis for accepting the contributions . . . without a written agreement between Local 324 and the employers" (ECF No. 28, 1897), i.e., it would be a violation of Taft-Hartley. The trustees defended this position in their preliminary injunction briefing. (ECF No. 27, PageID.1501 ("Because it would violate LMRA § 302 for the Fund to accept contributions without the required agreement between the Union and the subject employers, the individual Trustees' actions directing the Funds to cease accepting the contributions cannot constitute a breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(2). In fact, it could constitute a breach of fiduciary duty to permit the Funds to accept the contributions in violation of § 302.")

After the Court did not accept their primary argument raised in the briefs, the trustees now retreat to the argument raised only cursorily during oral argument: they insist that they rejected contributions from POA contractors because Section 404 of ERISA forced their hand. Specifically, they say section 404 of ERISA obligates trustees to administer Taft–Hartley funds in accordance with the fund's governing instruments. The governing instruments include the Plan document and the trust agreement. And, according to the trustees, they have long interpreted the trust agreement to "require a contributing employer" to be "bound by a current or extended collective bargaining agreement." (ECF No. 35, PageID.2093, 2100; *see also* ECF No. 27, PageID.1535–1536.) That interpretation, they say, deserves deference. (ECF No. 35, PageID.2100–2101.)

Applying their interpretation of the trust agreement to the facts, the trustees conclude they do not breach their fiduciary obligations. The trustees point out that any contribution obligation on the part of the POA contractors expired in Spring 2018, when the 8(f) agreement with MITA expired and the union did not agree to extend it. (*Id.*) Absent a current or extended collective bargaining agreement, accepting contributions from POA contractors would run afoul of the trust agreement. Running afoul of the trust agreement would violate ERISA. And violating ERISA would be a breach of fiduciary duty. (ECF No. 35, PageID.2098.) But not so for the non-POA contractors. Now the trustees say Local 324 did more than just promise to continue negotiations; Local 324 extended the expired 8(f) agreements with non-POA contractors. As the extended collective bargaining agreements obligate non-POA contractors to contribute, the funds may lawfully accept money from those contractors. So the trustees maintain that rejecting POA contributions but accepting non-POA contributions stems from the trustees' long-running interpretation of the trust agreement.

However, in opposing the motion for preliminary injunction, the trustees were unequivocal that *all* of the 8(f) collective bargaining agreements expired—including those with the non-POA contractors. (ECF No. 27, PageID.1505; ECF No. 34, PageID.1996, 2000.) Yes, they argued that the union agreed to continue negotiating with the non-POA contractors for successor agreements, but no, they did not argue the expired CBAs had been extended. (ECF No. 27, PageID.1505.) So this new argument is inappropriate on a motion for reconsideration. *See Phillips v. Hoffner*, No. 14-10767, 2014 U.S. Dist. LEXIS 111934, at *3–4 (E.D. Mich. Aug. 13, 2014).

Even considering it, the trustees' ERISA argument does not underscore a palpable defect in the order granting injunctive relief. Recall that in that order, the Court found Furwa was likely to succeed on her claim that the trustees breached their fiduciary duties. The trustees' fiduciary duties flow from Taft–Hartley, and ERISA codifies them. *See NLRB v. Amax Coal Co., Div. of Amax*, 453 U.S. 322, 332 (1981) (looking to legislative history to reason that Congress intended ERISA to codify "the strict fiduciary standards that a [Taft–Hartley fund] trustee must meet"). And while Taft–Hartley and ERISA each require that employer payments to a union be made in accordance with a "written agreement," neither statute forces the trustees to condition contribution obligations on the existence of a current or extended collective bargaining agreement. *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Northwestern Construction, Inc.*, Nos. 95-2379 and 96-1346, 1997 U.S. App. LEXIS 15440, at *9 (6th Cir. 1997); *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989); *see also Midwest Operating Eng'rs Welfare Fund v. Cleveland Quarry*, 844 F.3d 627, 629 (7th Cir. 2016). And yet, the trustees interpret the trust agreement to do just that. But the fact that the trustees read the trust agreement more strictly than either Taft–Hartley or ERISA require does not alter Furwa's chances of success on her breach-of-fiduciary-duty claim.

And it appears the trustees' interpretation of the trust agreement puts the governing instruments in tension. The trust agreement defines "Contributing Employer" to include "any member of an Association who is bound by the terms of a collective bargaining agreement between the Union and his Association to make contributions to the Trust Fund." (ECF No. 27, PageID.1535–1536.) Assuming, as the trustees claim, "current" or "extended" CBA must be read into the definition of "Contributing Employer," then the POA contractors—no longer bound by a current or extended CBA—would not count as employers under the trust agreement but would be an "Employer" for the purposes of the Plan document. The Plan document defines "Employer" to include any "association . . . who is obliged, by a Collective Bargaining Agreement *or other written agreement satisfying the requirements of [Taft–Hartley]*, to make contributions to the Plan." (ECF No. 27, PageID.1575 (emphasis added).) And, as this Court previously found, "other written agreement" that complies with Taft–Hartley could include expired or repudiated collective bargaining agreements.[2] *Cibao Meat Prods. v. NLRB*, 547 F.3d 336, 341 (2d Cir. 2008); *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Northwestern Construction, Inc.*, Nos. 95-2379 and 96-1346, 1997 U.S. App. LEXIS 15440, at *7–8 (6th Cir. 1997); *Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 883 (9th Cir. 1996); *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 375 (7th Cir. 1985); *Denver Metro. Ass'n of Plumbing, Heating, Cooling Contractors v. Journeyman Plumbers & Gas Fitters Local No. 3*, 586 F.2d 1367, 1373 (10th Cir. 1978). So the trustees' interpretation might mean that an employer under the Health Care Plan

---

[2] Indeed, when the Court found that a repudiated collective bargaining agreement satisfied Taft–Hartley, (ECF No. 32, PageID.1981), it did so, in part, because of the trustees' representation that complying with Taft–Hartley would also ensure compliance with the Health Care Plan Document (ECF No. 27, PageID.1515).

document is not an employer under the Health Care Plan trust agreement. Thus, the trustees' interpretation of the trust agreement does not insulate them from a breach of fiduciary duty claim.

Finally, the remaining arguments raised by the trustees do not persuade. They complain that if the Court's order stands, they will have no recourse, under ERISA, to enforce some contribution obligations – i.e., if the POA-contractors short-change their contributions. (ECF No. 35, PageID.2095–2096.) That might be true. *See Laborers Health and Welfare Trust Fund v Advanced Lightweight Concrete Co*., 484 U.S. 539 (1988). But that does not mean the trustees will be without any recourse to enforce collection obligations. *See Alaska Trowel*, 103 F.3d at 882 (permitting a Taft–Hartley fund to recover contribution obligations on an equitable estoppel theory). And they say the Court was wrong to suggest *union* employees are still working. (ECF No. 35, PageID.2105–2106 (emphasis added).) The say the union has actively discouraged its employees from working for POA contractors. But the trustees do not dispute that skilled tradespeople continue to work for POA contractors. And they do not dispute that POA contractors wish to make monetary contributions to the fund for these skilled tradespeople.

Boiled down, the trustees' justifications for rejecting some monetary contributions but not others do not pass legal muster. And in practice, the trustees' distinction between POA and non-POA contractors means certain beneficiaries of the Health Care Plan, like Furwa, run the risk of losing healthcare benefits, despite the fact that they continue to show up for work. And their employers continue to make healthcare contributions, even though the collective bargaining agreement expired. So the preliminary injunction merely orders the trustees, with "an eye single" to the interests of their beneficiaries, to accept and credit payments. The trustees' new ERISA arguments do not demonstrate a palpable defect in the Court's order issuing an injunction. The motion to reconsider is therefore DENIED.

9

**B.**

The trustees also move to stay the injunction pending an appeal. (ECF No. 36, 37.) Usually, a notice of appeal removes a district court's power to control "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). However, Federal Rule of Civil Procedure 62(c) permits this Court to stay an injunction while an appeal from a grant of injunctive relief is pending. Fed. R. Civ. P. 62(c). The Rule provides that "[w]hile an appeal is pending from an interlocutory order. . . that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." *Id.* In deciding whether to issue a Rule 62(c) stay, the Court must consider the following four factors:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (per curiam) (citation omitted).

Courts view Rule 62(c) motions in two ways. On the one hand, some courts say Rule 62(c) just preserves the status quo once a party files a notice of appeal. *See Natural Res. Def. Council v. Southwest Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 819–20 (5th Cir. 1989). Other courts maintain that Rule 62(c) is intended to preserve the "integrity" of the appeal. *See Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3d Cir. 1989). Under the first approach, courts can do very little to "suspend, modify, or restore" an injunction; under the second approach, courts have slightly more room to maneuver. Either way, Rule 62(c) is not an invitation to reconsider the merits of the injunction, and any action taken pursuant to the rule may not "materially alter the status of the case on appeal." *Natural Resources Defense Council, Inc. v. Southwest Marine Incorporated*, 242 F.3d 1163, 1166 (9th Cir.

2001) (quoting Allan Ides, "The Authority of Federal District Court to Proceed After a Notice of Appeal Has been Filed," 143 F.R.D. 307, 322 (1992)); *Kosilek v. Spencer*, No. 00-12455, 2012 U.S. Dist. LEXIS 152997, at *3–4 (D. Mass. Oct. 24, 2012).

The trustees say there is a likelihood that they will prevail on the merits of their appeal. (ECF No. 36, PageID.2286.) In support, they incorporate the arguments made in their motion for reconsideration (*see* ECF No. 36, PageID.2286), which the Court just rejected.

However, a stay can be warranted where "matters of first impression" are at issue. *Simon Prop. Group, Inc. v. Taubman Ctrs., Inc.*, 262 F. Supp. 2d 794, 797 (E.D. Mich. 2003). Here, the trustees say the specific facts of this case are a first for the circuit courts. (ECF No. 36, PageID.2286.) And, it is at least clear that the Sixth Circuit has never addressed whether an expired 8(f) collective bargaining agreement can satisfy Taft–Hartley's "written agreement" requirement when the union repudiates—or terminates—the negotiating relationship with the employer. So the trustees have at least shown that the first factor balances out in favor of granting a stay.

As for irreparable harm, the trustees point to actuarial troubles. They say issuing the injunction effectively made the Plaintiffs eligible individuals covered by the Health Care Plan. (ECF No. 36, PageID.2288.) And the fund must pay out all claims for eligible individuals. (*Id.*) But, if the injunction is reversed, the Plaintiffs would become ineligible. And, say the trustees, it would be "difficult to impossible" to "undo" any claims paid out on behalf of ineligible individuals. (ECF No. 36, PageID.2286–2287.)

The trustees' worries about the actuarial health of the fund is not without merit. The actuarial soundness of Taft–Hartley funds is a serious concern. *See Morse v. New York State Teamsters Conference Pension and Retirement Fund*, 580 F. Supp. 180, 188 (W.D.N.Y. 1983) (Curtin, J.), *aff'd*, 761 F.2d 115 (2d Cir. 1985); *Central Hardware Co. v. Central States, Southeast*

*& Southwest Areas pension Fund*, 770 F.2d 1096 (8th Cir. 1985) (trustees have power to reject contributions from employer which would threaten actuarial soundness of the fund). And it is possible that the monetary damage would be so hard to calculate, that the damages would be irreparable. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). So it is conceivable that the trustees might be irreparably harmed absent a stay. But, as discussed below, there is a way to minimize this harm.

And the trustees' argument elides the stay's harm to Furwa and the other plaintiffs. A stay pending appeal would return the parties to the status quo prior to the injunction, which would work to deny healthcare for Furwa and the others. Compounding the harm, Furwa and others, according to their declarations, continue to work. And the Plaintiffs' employers continue to wish to pay them, including their healthcare benefits. As the trustees recognize, this is a unique situation. Most of the case law involves suits by the unions or fund trustees against the employers seeking to compel the employers to continue making contributions. Here, the employers are voluntarily agreeing to continue to pay their workers what the expired collective bargaining agreement requires—including healthcare—and yet, the trustees are rejecting the payments. (ECF No. 17, PageID.679); *See Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 461 (6th Cir. 1989). The trustees insist that the Plaintiffs continue to work without any of the benefits or obligations guaranteed to them by the expired 8(f) agreement. (ECF No. 35, PageID.2105–2107.) Yet, the trustees have not adequately explained why the union's negotiating position in any way alters their fiduciary obligation to the beneficiaries.

Thus, both the trust fund and working tradespeople face the prospect of harm depending on whether the Court stays or does not stay the injunction pending appeal.

So, consistent with Rule 62(c) and in balancing the factors, the Court will modify the injunction to "ensure the effectiveness of the eventual judgment." Charles Alan Wright & Arthur R. Miller, 11 Federal Practice and Procedure § 2904 (2d ed. 2012). For one, the injunction will be limited only to the named plaintiffs (as the trustees have said is proper). (ECF No. 35, PageID.2090.) And second, the Court orders the Health Care Plan's trustees to keep, in escrow, all contributions made by the named plaintiffs' employers on behalf of the named plaintiffs. Keeping the funds in escrow ensures the employees are paid what the employers seek to pay them, and the fund can maintain its actuarial soundness.

In sum, the Court modifies the injunction as follows. Prior to a decision on class certification, the preliminary injunction issued on December 3, 2018, shall apply solely to the named Plaintiffs, and, for the duration of the litigation, the Health Care Plan is to keep, in escrow, all contributions made by Plaintiffs' employers on Plaintiffs' behalf. With this modification and resulting reduction in irreparable harm to the trustees, the Court DENIES the trustees' motion for a stay pending appeal. (ECF No. 36.)

SO ORDERED.

                                                             s/Laurie J. Michelson
                                                             LAURIE J. MICHELSON
                                                             UNITED STATES DISTRICT JUDGE

Date: January 30, 2019

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 30, 2019.

                                                             s/William Barkholz
                                                             Case Manager to
                                                             Honorable Laurie J. Michelson